

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 2-07-458-CV

IN THE INTEREST OF K.W., A CHILD

------------

FROM THE 323RD DISTRICT COURT OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

Appellant Casey E. appeals the trial court's order terminating his parental rights to K.W. We affirm.

Appellant and K.W.'s biological mother Courtney W. had known each other for approximately eight years and had been together for ten or eleven months when K.W. was born on October 12, 2006.[2] On December 25, 2006, when K.W. was approximately two months old, appellant and Courtney rushed

---

[1] *See* TEX. R. APP. P. 47.4.

[2] Appellant and Courtney have never been married.

a friend to Arlington Memorial Hospital as a result of a drug overdose. Both Appellant and Courtney were under the influence of marihuana at the time; K.W. was in the van.

Attempting only to drop their friend off at the hospital, appellant and Courtney were stopped by a security guard who smelled a strong odor of marihuana on both of them and suspected that they were high. Appellant and Courtney were sequestered in a "quiet room" until Arlington police arrived.

Upon his arrival at the hospital, Arlington Police Officer Noe DeLaCruz questioned appellant and Courtney about their drug use, and both admitted to smoking marihuana. Appellant, on parole for possession of methamphetamines and possession of chemicals to produce a controlled substance, was arrested for parole violations. Courtney consented to a search of the van, and Officer DeLaCruz found drug paraphernalia—a pipe with what he believed to be marihuana in it, eight to nine individual bags of marihuana, and a scale.

The hospital staff contacted the Department of Family and Protective Services (the "Department") and made a referral concerning K.W., stating that a young man and woman high on marihuana had arrived at the hospital with a lady who had had a drug overdose, that they were there with their infant child, and that the child was dirty, had a urine-soaked diaper, reeked of urine, and smelled of marihuana. His car seat also smelled of marihuana. There was no

2

evidence of marks or bruising on K.W., and he appeared to be well fed. K.W. was taken into the Department's custody that night. Soon thereafter, K.W. was placed in a foster home in Fort Worth.

On December 27, 2006, the Department filed a petition for protection of a child, for conservatorship, and for termination in a suit affecting the parent-child relationship seeking the involuntary termination of appellant and Courtney's parental rights to K.W.[3]

While incarcerated and during the Department's investigation, appellant met with Jeanette Leong, the caseworker assigned to K.W. Leong provided appellant with a service plan and discussed potential relatives K.W. could be placed with. All potential relatives, however, were either not interested in caring for K.W., not able to care for K.W., or disqualified from caring for K.W. Appellant continued to correspond with Leong throughout the course of the Department's investigation, notifying her of address changes, asking questions about the case, explaining the steps he was taking to comply with his service plan, and always expressing concern for K.W. While appellant took every class offered to him in jail— parenting, anger management, covenant marriage and

---

[3] On October 17, 2007, Courtney filed with the trial court an affidavit of relinquishment of parental rights voluntarily relinquishing her parental rights to K.W. She did not appeal the termination of her parental rights to K.W.

bible classes, he was not provided an opportunity to attend a substance abuse program and, therefore, did not.

On December 6, 2007, the case went to trial. The trial court heard evidence of appellant's history of criminal behavior and drug abuse. Appellant testified to having been arrested five or six times, and previously serving three years on drug charges. Appellant admitted to being under the influence of marihuana on December 25, 2006, and admitted to smoking methamphetamine in the weeks prior to K.W.'s removal. At the time of trial, appellant had been incarcerated for almost a year. He was scheduled to be released on February 27, 2008.

Leong testified that she believed appellant was making every effort to comply with his service plan; however, appellant's prior methamphetamine use was her "prime concern" because, while incarcerated, appellant had been unable to complete a substance abuse program. He had been unable, therefore, to demonstrate the ability to refrain from the highly addictive drug when faced with the stress of daily life.

With regard to K.W., Leong testified that he had been placed in foster care where he was "thriving," and the Department's permanency plan was for K.W. to be adopted by the foster parent he had been placed with in December 2006 (his "foster mother"). Leong opined that K.W. and his foster mother had

4

developed a bond and testified that K.W.'s foster mother had maintained contact with and had continued to visit K.W. after he was placed in a second foster home.[4]

At the close of the hearing, appellant asked the trial court to deny the Department's petition for termination, but place permanent managing conservatorship with the Department and give appellant the opportunity to reestablish his parent-child relationship with K.W.

On December 17, 2007, the trial court entered an order of termination finding that appellant had knowingly placed or knowingly allowed K.W. to remain in conditions or surroundings which endangered K.W.'s emotional or physical well-being and had engaged in conduct or knowingly placed K.W. with persons who engaged in conduct which endangered K.W.'s emotional or physical well-being and that termination of the parent-child relationship between appellant and K.W. was in K.W.'s best interest. This appeal followed.

In his sole issue, appellant challenges the legal and factual sufficiency of the evidence with respect to the trial court's finding that terminating his parental rights was in the best interest of K.W.

---

[4] K.W. was placed in a second foster home when his foster mother was called to complete basic training. At the time of trial, the foster mother had completed basic training.

5

In proceedings to terminate the parent-child relationship brought under section 161.001 of the family code, the petitioner must establish one ground listed under subdivision (1) of the statute and must also prove that termination is in the best interest of the child.[5] Because of the elevated status of parental rights, the quantum of proof in a termination proceeding is elevated from the preponderance of the evidence to clear and convincing evidence.[6] The higher burden of proof in termination cases alters the appellate standard for both legal and factual sufficiency reviews.[7] Both legal and factual sufficiency reviews in termination cases must take into consideration whether the evidence is such that a fact-finder could reasonably form a firm belief or conviction about the truth of the matter on which the State bears the burden of proof.[8]

Accordingly, in reviewing the evidence for legal sufficiency in parental termination cases, we look at all the evidence in the light most favorable to the

---

[5] TEX. FAM. CODE ANN. § 161.001 (Vernon Supp. 2007); *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005).

[6] *Santosky v. Kramer,* 455 U.S. 745, 758–59, 102 S. Ct. 1398 (1982); *see also* TEX. FAM. ANN. § 161.001.

[7] *In re J.F.C.,* 96 S.W.3d 256, 265 (Tex. 2002); *In re C.H.,* 89 S.W.3d 17, 25 (Tex. 2002); *In re J.T.G.,* 121 S.W.3d 117, 124 (Tex. App.—Fort Worth 2003, no pet.).

[8] *J.F.C.,* 96 S.W.3d at 265-66; *C.H.,* 89 S.W.3d at 25; *J.T.G.,* 121 S.W.3d at 124.

finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. In conducting our review, we must also disregard all evidence that a reasonable fact-finder could have disbelieved; however, we must consider undisputed evidence even if it is contrary to the finding.[9] That is, we must consider evidence favorable to termination if a reasonable fact-finder could, and disregard contrary evidence unless a reasonable fact-finder could not.[10] But we cannot weigh witness credibility issues that depend on the appearance and demeanor of the witnesses, for that is the fact-finder's province.[11]

In reviewing the evidence for factual sufficiency, we must give due deference to the fact-finder's findings and not supplant the judgment with our own.[12] We must determine whether, on the entire record, a fact-finder could reasonably form a firm conviction or belief that the termination of the parent's parental rights would be in the best interest of the child.[13] If, in light of the entire record, the disputed evidence that a reasonable fact-finder could not have

---

[9] *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

[10] *Id.*

[11] *Id.* at 573, 574.

[12] *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006).

[13] *C.H.*, 89 S.W.3d at 17.

credited in favor of the finding is so significant that a fact-finder could not reasonably have formed a firm belief or conviction in the truth of its finding, then the evidence is factually insufficient.[14]

Prompt and permanent placement of the child in a safe environment is always presumed to be in the child's best interest.[15] Nonexclusive factors that the trier of fact in a termination case may use in determining the best interest of the child include:

(1)    the desires of the child;

(2)    the emotional and physical needs of the child now and in the future;

(3)    the emotional and physical danger to the child now and in the future;

(4)    the parental abilities of the individuals seeking custody;

(5)    the programs available to assist these individuals to promote the best interest of the child;

(6)    the plans for the child by these individuals or by the agency seeking custody;

(7)    the stability of the home or proposed placement;

---

[14] *H.R.M.*, 209 S.W.3d at 108.

[15] TEX. FAM. CODE ANN. § 263.307(a) (Vernon 2002).

(8)     the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and

(9)     any excuse for the acts or omissions of the parent.[16]

These factors are not exhaustive; some listed factors may be inapplicable to some cases; other factors not on the list may also be considered when appropriate.[17]   Furthermore, undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the best interest of the child.[18]   On the other hand, the presence of scant evidence relevant to each factor will not support such a finding.[19]

Reviewing the record in light of these factors, the evidence shows:

- K.W. was doing well in foster care, had passed all early childhood intervention screenings, and was a healthy baby. Leong testified that "[h]e's doing great." She said that she had seen a bond develop between K.W. and his foster mother and his foster mother had continued to keep in contact with him and visit him.

- Appellant exposed K.W. to drugs and drug activity.  On the night of December 25, 2006, appellant allowed K.W. to ride in the van while he and Courtney were under the influence of marihuana.

---

[16] *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

[17] *C.H.*, 89 S.W.3d at 27.

[18] *Id.*

[19] *Id.*

- Appellant has a history of crime and illegal drug use. He has not been able to complete a substance abuse program during his incarceration because none is offered. Appellant testified, however, that he had done well working toward accomplishing the goals of his service plan, although he admits that in the past he had found it difficult to obey the law outside of an institutionalized environment. Appellant attempted to better himself by completing an anger resolution seminar, a covenant of marriage class, a "Born to Win" bible class, and a parenting seminar.

Based on our review of the entire record, and giving due consideration to the evidence that the fact-finder could have reasonably found to be clear and convincing, we hold that the above evidence is legally and factually sufficient to support the trial court's best-interest finding.[20] We overrule appellant's sole issue.

Having overruled appellant's only issue, we affirm the trial court's order terminating his parental rights to K.W.

PER CURIAM

PANEL F: CAYCE, C.J.; LIVINGSTON and DAUPHINOT, JJ.

DELIVERED: July 3, 2008

---

[20] *See In re S.M.L.*, 171 S.W.3d 472, 480 (Tex. App.—Houston [14th Dist.] 2005, no pet.)(holding clear and convincing evidence existed that termination of father's parental rights was in the child's best interest where, among other factors, father was incarcerated at the time of the termination hearing and had a pattern of criminal and violent conduct).